IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on March 13, 2025

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Grand Jury Original |
| | : | |
| v. | : | Criminal No. |
| | : | |
| JEFFREY D'SOUZA, | : | VIOLATIONS: |
| | : | |
| Defendant. | : | 18 U.S.C. §§ 1343, 2 (Wire Fraud) |
| | : | |
| | : | FORFEITURE ALLEGATION: |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p). |

## INDICTMENT

The Grand Jury charges that, on or about the times and dates stated herein:

### Introduction

At all times material to this Indictment, except as otherwise indicated:

1. Victim #1 was a non-profit organization established under the law of the District of Columbia with the stated mission of seeking improvements to the climate through reforms to the use of carbon-based products. Victim #1 has employees in the District of Columbia and maintains its headquarters office in the District of Columbia.

2. Defendant Jeffrey D'Souza was an employee of Victim #1 from January of 2021 through December of 2022. D'Souza was employed as the Chief Operating Officer (COO) and the Chief Financial Officer (CFO) for Victim #1. D'Souza worked remotely from his residence located in the United Kingdom.

3. As COO and CFO, D'Souza was responsible for preparing spreadsheets, paying invoices, and paying employees working for Victim #1 in various countries. In addition, D'Souza regularly communicated with the founder and Chief Executive Officer (CEO) of Victim #1.

4. D'Souza was also responsible for preparing electronic payments to various vendors, who provided supplies and services to Victim #1. D'Souza would review invoices from true vendors and digitally submit them to Victim #1 originally through e-mails and later through cloud-based file sharing. Once received by Victim #1, the CEO of Victim #1 would approve payment. A Victim #1 employee, located in the District of Columbia, would then go online and access the organization's bank and make an electronic payment to the vendor. The bank's servers were located outside of the District of Columbia.

5. D'Souza's job responsibilities also included making payroll disbursements for Victim #1. Victim #1's payroll obligations were handled by an outside contractor, VEEM. Victim #1's employees were paid through VEEM's payroll processing system. VEEM used computers to transmit salary payments into the bank accounts of Victim #1 employees as designated by the employee. D'Souza had exclusive access to Victim #1's VEEM account.

## COUNTS ONE THROUGH SEVEN

### (Wire Fraud)

6. Paragraphs 1 through 5 are incorporated herein.

7. Beginning in January 2021 and continuing to December 2022, in the District of Columbia and elsewhere, the defendant,

### JEFFREY D'SOUZA

devised and intended to devise a scheme to defraud his employer, Victim #1, and to obtain money and property from Victim #1 by means of materially false and fraudulent pretenses, representations and promises, which misappropriation of funds is more fully described below.

### Purpose of the Scheme to Defraud

8. It was a purpose of the scheme to defraud for D'Souza to enrich himself by stealing money from Victim #1 and directing Victim #1's money to support D'Souza's and his family's lifestyle and to pay for services provided to D'Souza and his family.

### Manner and Means

It was part of the scheme to defraud that:

9. On numerous occasions between January 2021 and December 2022, D'Souza used his position as COO and CFO to direct funds owned by and belonging to Victim #1 – and to which D'Souza was not entitled nor authorized to receive – to be deposited into accounts for businesses owned and operated by D'Souza. D'Souza effectuated this scheme by creating, transmitting, and submitting falsified invoices to Victim #1.

10. D'Souza made material misrepresentations to disguise the true nature of the financial transfers from Victim #1's bank account to his bank accounts for businesses owned and operated by D'Souza, to pay for D'Souza's rent, to pay for the college expenses for D'Souza's son, to make donations to Columbia University, including, among other material misrepresentations:

(a) misleading and false statements to his employer and employees of Victim #1, including false entries in Victim #1's business records;

(b)   disguising and altering unauthorized invoices by falsely and fraudulently representing that the payees were the vendor, when in fact the invoices were altered by D'Souza and the payees were businesses owned and operated by D'Souza, and/or organizations that had provided personal, educational or rental services to D'Souza or his family;

(c)   using his access to VEEM to transfer funds into his personal bank account or accounts belonging to businesses owned by D'Souza; and

(d)   making misleading and false statements to third parties receiving Victim #1 funds.

### Acts in Furtherance of the Scheme to Defraud

11.   Between January 2021 and December 2022, D'Souza caused disbursements to be made from Victim #1's bank account to be deposited into accounts for businesses owned and operated by D'Souza. These businesses did not provide services or products to Victim #1 and these disbursements were fraudulently induced by D'Souza.

12.   Between January 2021 and January 2022, D'Souza made false and fraudulent entries into Victim #1's business records to cover up his scheme to defraud Victim #1.

### Execution of the Scheme

### COUNTS ONE THROUGH THREE

13.   On the dates set forth in the chart below, in the District of Columbia and elsewhere, D'Souza, for the purpose of executing and attempting to execute the aforementioned scheme to defraud, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds. That is, D'Souza, from his home in the United Kingdom, connected to and through the e-mail system utilized by Victim #1 for conducting business in the District of Columbia, utilized online computer website and cloud

application, which was hosted on servers located in the United States outside the District of Columbia, and thereby digitally submitted fraudulent invoices, including altered and falsified invoices. Those invoices caused the financial transfers from the Victim #1's bank account to his own personal bank account or accounts for businesses owned and operated by D'Souza. These fraudulent invoices resulted in a loss of over $500,000 from Victim #1.

14. D'Souza would replace the bank account numbers of true vendors with account numbers for certain United Kingdom companies owned and operated by D'Souza and falsely represent those certain services had been provided to Victim #1. The companies owned by, and whose accounts were controlled by, D'Souza included RavenOryx and CarbonQuant.

| Count | Date (Approx.) | Description |
| --- | --- | --- |
| ONE | October 16, 2021 | D'Souza digitally submitted a fraudulent invoice purporting to be from ChainCarbon in the amount of £8,000 (GBP), worth about $11,185.00, which had routing numbers intended to cause and which did cause these funds to be deposited into a RavenOryx bank account. |
| TWO | August 19, 2021 | D'Souza digitally submitted a fraudulent invoice purporting to be from ChainCarbon in the amount of £6,860 (GBP), worth about $9,726.36, which had routing numbers intended to cause and which did cause these funds to be deposited into a RavenOryx bank account. |
| THREE | July 8, 2021 | D'Souza digitally submitted a fraudulent invoice purporting to be from ChainCarbon in the amount of £7,920 (GBP), worth about $11,325.61, which had routing numbers intended to cause and which did cause these funds to be deposited into a RavenOryx bank account. |

## COUNT FOUR

15. Between March 2021 and January 2022 in the District of Columbia and elsewhere, D'Souza, for the purpose of executing and attempting to execute the scheme to defraud, did cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds. That is, D'Souza digitally submitted invoices to Victim #1 that

5

falsely indicated that Columbia University would or had provided goods and services to Victim #1. D'Souza's fraudulent invoices provided that funds belonging Victim #1 would be periodically transmitted to Columbia University. These transfers and/or expenditures were not authorized and were not in exchange for services or good provided to Victim #1. Instead, D'Souza caused the transfer of funds from Victim #1 to Columbia University to be made as a donation on behalf of D'Souza. On or about January 31, 2022, $26,000 was transferred to Columbia University from Victim #1's account in furtherance of D'Souza scheme.

16. Specifically, D'Souza did cause to be transmitted the following wire communication in interstate commerce: On or about January 20, 2022, D'Souza digitally submitted a fraudulent invoice in the amount $26,000 to Victim #1 falsely indicating that Columbia University had conducted services on behalf Victim #1, which caused Victim #1 to digitally direct its bank to send $26,000 to Columbia University.

## COUNT FIVE

17. Between January of 2021 and December 2022, in the District of Columbia and elsewhere, D'Souza, for the purpose of executing and attempting to execute the aforementioned scheme to defraud, did cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds. That is, D'Souza digitally submitted invoices to Victim #1 that resulted in funds being directed to Mountgrange Heritage, a real estate business based in the United Kingdom to pay D'Souza's rent. These payments were not authorized and were not made in exchange for goods or services provided to Victim #1.

18. Specifically, D'Souza did cause to be transmitted the following wire communication in interstate commerce: On January 2, 2022, D'Souza submitted a fraudulent invoice to Victim #1 in the amount of £6,973.50 (GBP), worth about $9,711.04, which caused

Victim #1 to pay out that amount for D'Souza's personal benefit.

**(Wire Fraud and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1343, 2)**

## COUNT SIX

19. Between January of 2021 and December 2022, in the District of Columbia and elsewhere, D'Souza, for the purpose of executing and attempting to execute the scheme to defraud, did cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds. That is, D'Souza submitted invoices to Victim #1 that resulted in funds being directed to Charterhouse School (which is associated with Oxford University in the United Kingdom) to pay tuition for D'Souza's son, who was a student during this period. These payments were not authorized and were not made in exchange for goods or services provided to Victim #1.

20. Specifically, D'Souza did cause to be transmitted the following wire communication in interstate commerce: On February 10, 2022, D'Souza digitally submitted a fraudulent invoice to Victim #1 in the amount of £1578.78 (GBP), worth about $2,038.63, which caused Victim #1 to pay out that amount for D'Souza's personal benefit.

**(Wire Fraud and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1343, 2)**

## COUNT SEVEN

21. Between January of 2021 and December 2022, in the District of Columbia and elsewhere, D'Souza, for the purpose of executing and attempting to execute the scheme to defraud, did cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds. That is, D'Souza utilized his access to Victim #1's account at VEEM and directed funds to be deposited his personal account and/or accounts

belonging to companies owned by D'Souza. These disbursements were not authorized, and they were not in exchange for any goods or services provided to Victim #1. These fraudulent and unauthorized disbursements resulted in a loss of $239,284.95.

22. Specifically, D'Souza did cause to be transmitted the following wire communication in interstate commerce: On May 23, 2022, utilized his access to Victim #1's VEEM account and digitally directed that $11,689 be transmitted to a bank account of a company owned and operated by D'Souza in the United Kingdom, which caused Victim #1 (through VEEM) to pay out that amount for D'Souza's personal benefit.

**(Wire Fraud and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1343, 2)**

## FORFEITURE ALLEGATION

Upon conviction of any of the offenses alleged in Counts One through Seven of this Indictment, the defendant shall forfeit to the United States any property, real or personal, constituting or derived from proceeds the defendant obtained as the result of these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $700,000.

If any of the property described above as being subject to forfeiture, because of any act or omission of the defendant,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL

FOREPERSON

JEANINE FERRIS PIRRO
United States Attorney

By: *[signature: Jonathan P. Hooks]*
Jonathan P. Hooks
Chief, Fraud, Public Corruption, and Civil Rights Section